# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF JAMES B. SUSTACHE et al.,**
      **Plaintiffs-Appellants,**

  v.                                                            Case No. 10-C-0863

**JEFFREY WAYNE MATHEWS,**
      **Defendant-Appellee.**

---

## OPINION

This is an appeal from the bankruptcy court's disposition of an adversary complaint alleging the nondischargeability of a claim on the ground that the debtor caused willful and malicious injury. Following a two-day trial, the bankruptcy court found that the debtor's conduct was not willful and malicious and that the claim was dischargeable.

## I. BACKGROUND

The events giving rise to this case occurred on New Year's Eve in 2004, when the debtor, Jeffrey Wayne Mathews, was a 16-year-old sophomore at Bradford High School in Kenosha, Wisconsin.[1] While he was at work that night, Mathews received harassing phone calls from an unknown number. The person at the other end of the phone was James B. "Nino" Sustache, who proceeded to called Mathews names and threaten him. The phone calls revolved around Mathews's involvement with a girlfriend of Nino's friend, Ryan Koessl. The girl, Nino and Mr. Koessl were students at Tremper High School in

---

[1] I take the facts recited in this opinion from the bankruptcy court's findings of fact and conclusions of law.

Kenosha. At the time of the call, Nino was at a teenage drinking party, and he gave Mathews the address of the party and encouraged him to come to the party and fight.

Eventually, Mathews arrived at the party with five or six of his friends. There were forty to fifty Tremper students outside the house where the party was held, including Nino. Mathews asked for Nino, and Nino identified himself. A crowd of Tremper students formed around Mathews and Nino and began yelling for a fight. At this point, someone yelled that the cops were coming, and this caused a number of people in the group to run away, including the friends Mathews had brought with him. However, a large group of intoxicated teenagers remained, and they continued to demand that Mathews and Nino fight.

Now that his friends had fled, Mathews believed that if he tried to run away he would get "jumped" by the crowd. Nino continued to threaten Mathews and lifted up his shirt to reveal his "abs," a gesture that Mathews and others in the crowd interpreted as intimidating. Mathews responded by taking off his shirt. Nino approached Mathews and pushed him in the chest. Mathews stumbled back and then came forward with a closed-fisted punch that landed on the side of Nino's face. Nino fell to the ground and did not get up. One of Nino's friends stepped forward and punched Mathews. Mathews fell to the ground from the punch but was able to get up run away. The whole incident lasted only a few seconds. However, Nino was seriously injured, and two weeks after the incident he died from his injuries.

Nino's estate sued Mathews in state court and attempted to recover against Mathews's family's homeowner's insurance. The coverage issue went to the Wisconsin Supreme Court, which found in favor of the insurer. See Estate of Sustache v. Am. Fam. Mut. Ins. Co., 311 Wis. 2d 548 (2008). Lacking coverage, Mathews filed for bankruptcy

under Chapter 7. Nino's estate and his parents filed an adversary complaint alleging that their claim was nondischargeable as a willful and malicious injury. At the conclusion of a two-day trial, the bankruptcy court found that Mathews's actions were willful but took the question of whether his conduct was malicious under advisement. The parties filed briefs on the issue, and the court issued a written decision finding that Mathews's actions were not malicious because he had acted in self-defense. Plaintiffs appeal this determination.

## II. DISCUSSION

Section 523(a)(6) of the Bankruptcy Code provides that "a discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." In applying the "malicious" element of this provision, the bankruptcy court concluded that a person's actions are not malicious if his actions would fall within a self-defense privilege under state law. Plaintiffs do not claim that this legal conclusion regarding the meaning of "malicious" was erroneous. Nor do plaintiffs claim that the bankruptcy court clearly erred in making the factual findings underlying its ultimate conclusion that Mathews's actions fell within the self-defense privilege as defined by Wisconsin law. See Wis. Stat. § 939.48. However, plaintiffs claim that in applying the law of self-defense to the facts of the case the bankruptcy court failed to consider two important aspects of the self-defense privilege under Wisconsin law: (1) whether Mathews could have retreated from the dangerous situation without using force against Nino; and (2) whether Mathews was precluded from claiming self-defense because he had provoked Nino's attack with intent to use the attack as an excuse to cause death or great bodily harm. Plaintiffs argue that the failure to consider these factors was legal

3

error, and that the case should be remanded to the bankruptcy court so that it can include these factors in its self-defense analysis.

**A.     Retreat**

The parties agree that under Wisconsin law there is no duty to retreat. However, the Wisconsin case law and pattern jury instructions indicate that a trier of fact may consider whether the defendant had an opportunity to retreat when determining whether the defendant reasonably believed that the amount of force used was necessary to prevent or terminate the attack. State v. Wenger, 225 Wis. 2d 495, 503 (Ct. App. 1999); Wis. JI – Criminal 810 (2010). Plaintiffs contend that the bankruptcy court "ignored [Mathews's] ability to retreat in its assessment of his reasonable beliefs [sic] of imminent danger." (Opening Br. [Docket #5] at 7.) This contention is belied by the record. The bankruptcy court explicitly credited Mathews's claim that at the time Nino initiated the attack Mathews was surrounded by drunken teenagers who were demanding to witness a fight, and that Mathews feared that the crowd would have "jumped" him had he tried to leave without fighting Nino. (Mem. Dec. at 11.) Clearly this factual finding played a role in the court's determination that Mathews reasonably believed that his use of force used was necessary to terminate Nino's attack, and thus I reject plaintiffs' argument that the bankruptcy court committed some form of legal error by failing to consider whether Mathews could have retreated.

**B.     Provocation**

Plaintiffs also contend that the bankruptcy court failed to consider the exception to the self-defense privilege that applies when a person provokes an attack "with intent to use

such an attack as an excuse to cause death or great bodily harm to his or her assailant." Wis. Stat. § 939.48(2)(c). Although it is true that the bankruptcy court did not explicitly consider this exception, that was because plaintiffs did not argue that it was applicable. In their post-trial briefs, plaintiffs urged the bankruptcy court to believe that Mathews did not act in self-defense because he was the one who initiated the fight by hitting Nino with a sucker punch. The bankruptcy court did not accept this version of events, and plaintiffs did not argue in the alternative that even if Mathews struck second he intended to provoke Nino so that he could use Nino's attack as an excuse to harm him. Indeed, plaintiffs' did not even cite § 939.48(2)(c) in their post-trial briefs. The bankruptcy court had no obligation to raise the possibility that this exception applied sua sponte, and so the court did not commit legal error by failing to discuss this exception in its decision.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the order of the bankruptcy court is **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 10th day of June, 2011.

/s_____
LYNN ADELMAN
District Judge

5